TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1785
     Facsimile: (213) 894-0142
     E-mail:    maxwell.coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:20-cr-00097-JAK-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT GENARO CORTES GONZALEZ |
| v. | |
| GENARO CORTES GONZALEZ, | Sentencing Date:  04/07/2022 |
| Defendant. | Sentencing Time:   8:30 a.m.<br>Location:    Courtroom of the<br>             Hon. John A.<br>             Kronstadt |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Maxwell Coll, hereby files its Sentencing Position regarding defendant Genaro Cortes Gonzalez ("defendant").

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report ("PSR") (Dkt. 124), the Joint

Statement Re: Defendant Genaro Cortes Gonzalez's Rule 11 Plea ("Joint Statement") (Dkt. 105), and such further evidence and argument as the Court may permit.

The government reserves the right to file a response to any additional sentencing position filed or submitted by defendant and to file any supplemental sentencing position that may be necessary.

Dated: March 24, 2022           Respectfully submitted,

                                TRACY L. WILKISON
                                United States Attorney

                                SCOTT M. GARRINGER
                                Assistant United States Attorney
                                Chief, Criminal Division


                                    */s/ Maxwell Coll*
                                MAXWELL COLL
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Genaro Cortes Gonzalez ("defendant") conspired to import methamphetamine and marijuana into the United States from Mexico and possessed with intent to distribute the controlled substances on a commercial bus.  On or about February 6, 2020, defendant and co-defendant Marco Polo Marquez drove a T2140 commercial passenger bus with approximately 13.45 kilograms of a mixture and substance containing a detectable amount of methamphetamine and approximately 77.8 kilograms of marijuana hidden in the gasoline tank of the bus.  (Joint Statement ¶ 17.)  Gonzalez parked the bus in the parking lot of co-defendant Roberto Carlos Adame Lopez's auto repair shop knowing that the drugs would be removed from the bus.  (Id.)

On November 4, 2021, defendant pleaded guilty to counts one, two, and three of the indictment.  Count one charges defendant with conspiracy to distribute and possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841 (a)(1), (b)(1)(A)(viii), and at least 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C).  (PSR ¶ 3.)  Count two charges defendant with possession with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(A)(viii).  (Id. ¶ 4.)  Count three charges defendant with possession with intent to distribute at least 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).  (Id. ¶ 5.)

In the PSR, the United States Probation and Pretrial Services Office ("USPO") calculated a total offense level of 26 and a criminal history category of I, resulting in a Sentencing Guidelines range of 63 to 78 months' imprisonment, but with an applicable 10-year statutory mandatory minimum term.  (PSR ¶¶ 29, 46.)  Since the issuance of the PSR, defendant has satisfied the requirements of safety-valve eligibility.  So the two-level decrease under U.S.S.G. § 2D1.1(b)(18) should be applied.  The adjusted offense level is 24, and the resulting Guidelines range is 51 to 63 months' imprisonment.

The government submits that a low-end sentence of 51 months' imprisonment, followed by five years of supervised release, and a $300 special assessment is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## II.   STATEMENT OF FACTS

### A.   Indictment and Joint Statement

On February 21, 2021, a grand jury returned an indictment charging defendant with conspiracy to distribute and possess with intent to distribute at least 500 grams of methamphetamine and at least 50 kilograms of marijuana (count one); possession with intent to distribute at least 500 grams of methamphetamine (count two); and possession with intent to distribute at least 50 kilograms of marijuana (count three).  (Dkt. 11.)  On November 4, 2021, defendant pleaded guilty to counts one, two, and three of the indictment.  (Dkt. 107.)

### B.   Joint Statement's Factual Basis

At the change of plea hearing, and in the Joint Statement, defendant admitted the following facts:

Defendant, co-defendant Marquez, co-defendant Adame Lopez, and others, beginning on an unknown date and continuing until on or about February 6, 2020, in Los Angeles County, within the Central District of California, and elsewhere, conspired and agreed with each other, to possess with the intent to distribute more than 500 grams, specifically, approximately 13.45 kilograms, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and at least 50 kilograms, specifically, approximately 77.8 kilograms, of marijuana, a Schedule I controlled substance.  (Joint Statement ¶ 17.)  At the time that he joined in the agreement, defendant knew that the agreement had the unlawful purpose of distributing and possessing with intent to distribute federally controlled substances, and he joined in the agreement with the intent to further those unlawful purposes.  (Id.)

During the course of an in furtherance of the conspiracy, defendant was hired as a bus driver by co-defendant Marquez, who owned a charter bus company.  (Id.)  Defendant and co-defendant Marquez transported methamphetamine and marijuana from Mexico to the United States in the gasoline tank of a commercial bus.  (Id.)  Co-defendant Adame Lopez maintained an auto repair shop in South Gate, California, where federally controlled substances, including methamphetamine and marijuana, could be removed from the bus.  (Id.)

In furtherance of the conspiracy and to accomplish its objects, on or about February 6, 2020, defendant and co-defendant Marquez drove a T2140 commercial passenger bus with approximately 13.45 kilograms of a mixture and substance containing a detectable amount of methamphetamine and approximately 77.8 kilograms of marijuana hidden in the gasoline tank of the bus.  (Id.)  At the time he drove

1 the bus, defendant knew the bus contained federally controlled
2 substances and he intended to distribute them to other persons.
3 (Id.)
4 　　　Defendant initially drove the bus containing methamphetamine and
5 marijuana to the San Ysidro port where United States Customs and
6 Border Protection ("CBP") Officers conducted a preliminary inspection
7 at the post primary bus staging area. (Id.) After CBP Officers
8 received an alert to a trained odor from a Narcotics/Human Detection
9 Dog, they directed defendant and co-defendant Marquez to a secondary
10 inspection point. (Id.)
11 　　　After the secondary inspection, co-defendant Marquez drove the
12 bus containing methamphetamine and marijuana through the border and
13 defendant crossed the border on foot. (Id.) Once both defendant and
14 co-defendant Marquez had crossed the border, the two met in the
15 United States where defendant returned to the bus. (Id.) Defendant
16 and codefendant Marquez then proceeded to drive towards Los Angeles
17 County. (Id.)
18 　　　Co-defendant Marquez drove the bus to the Los Angeles area.
19 (Id.) When they reached the Los Angeles area, defendant began
20 driving the bus and stopped the bus on the street near co-defendant
21 Adame Lopez's auto repair shop. (Id.) Co-defendant Marquez left the
22 bus with the methamphetamine and marijuana in the gasoline tank.
23 (Id.) Defendant then drove the bus to co-defendant Adame Lopez's
24 auto repair shop. (Id.) Defendant parked the bus at co-defendant
25 Adame Lopez's auto repair shop knowing and intending that co-
26 defendant Adame Lopez or others, would remove the federally
27 controlled substances from the bus for the purpose of further
28 distributing the federally controlled substances. (Id.) Defendant

4

jointly possessed with intent to distribute the federally controlled substances in furtherance of the conspiracy, along with co-defendant Marquez and co-defendant Adame Lopez. (Id.) After parking the bus, defendant walked across the street to a restaurant. (Id.) Law enforcement officers found defendant at the restaurant across the street from the auto repair shop. (Id.) Defendant also parked the bus at the auto repair shop where he knew drugs would be removed for distribution. (Id.)

### C. Mitigating Role

The government agrees with USPO that defendant is a minor participant and thus a two-point role adjustment should be applied under U.S.S.G. §3B1.2(b). (PSR ¶¶ 36-40.) Unlike co-defendant Marquez, Defendant did not own the bus company used to transport the drugs from Mexico to the United States. (Id.) And unlike co-defendant Adame Lopez, defendant did not run the auto repair shop to which the drugs were delivered. (Id.) While defendant drove the commercial bus from Mexico to the United States and knew the bus contained drugs, defendant had a limited role in planning or organizing the criminal activity and had limited decision-making authority. (Id.)

Defendant appears to argue for a four-level role reduction as a minimal participant under U.S.S.G. § 3B1.2(a). (Dkt. 137 at 4.) A four-level minimal-participant deduction applies to a defendant who is plainly among the least culpable of those involved in the conduct of a group. A four-level deduction is not appropriate here. Defendant knew the bus he drove had drugs and that he was importing the drugs to deliver to a destination in the United States. (PSR ¶ 39.) Defendant alone drove the commercial bus to the final

5

destination, the auto repair shop, knowing that drugs would be removed for distribution. (Id.) And defendant knew that he would receive money in exchange for transporting the drugs. (Id.) USPO correctly applied a two-level minor-participant deduction, not four levels.

### III. THE PRESENTENCE INVESTIGATION REPORT AND ITS CALCULATIONS

In the PSR, USPO calculated defendant's base offense level as 31, under U.S.S.G. § 2D1.1(a)(5), (c)(3). (PSR ¶¶ 27-28.) Because defendant is a minor participant, USPO correctly adjusted the base offense level from 34 to 31 under U.S.S.G. § 2D1.1(a)(5)(B)(ii). (Id. ¶ 29.) USPO then applied a two-level mitigating-role deduction under U.S.S.G. § 3B1.2(b). (Id. ¶ 40.) After applying a three-level deduction for timely acceptance of responsibility, under USSG § 3E1.1, the USPO calculated defendant's total offense level as 26. (Id. ¶¶ 44-46.)

USPO did not apply the two-level decrease under U.S.S.G. § 2D1.1(b)(18) because defendant had not yet satisfied the safety-valve requirements. (Id. ¶ 34.) Since issuance of the PSR, the government agrees that defendant has satisfied all of the elements of the safety-valve provisions. Thus the total offense level is 24.

The government also agrees with the PSR's calculations of defendant's criminal history score as zero and his criminal history category as I. (Id. ¶ 51.)

With a total offense level of 24 and a criminal history category of I, the applicable Guidelines range is 51 to 63 months' imprisonment.

## IV. A SENTENCE OF 51 MONTHS' IMPRISONMENT IS REASONABLE AND APPROPRIATE UNDER THE § 3553(a) FACTORS

The government recommends that the Court sentence defendant to a low-end Guidelines sentence of 51 months' imprisonment, followed by a five-year period of supervised release, and a special assessment of $300.  This sentence is sufficient, but not greater than necessary, to address defendant's criminal conduct, taking into account all the factors the Court must consider under 18 U.S.C. § 3553(a).

A low-end period of incarceration is necessary to punish for this serious offense, which involved approximately 13.45 kilograms of a mixture and substance containing a detectable amount of methamphetamine and approximately 77.8 kilograms of marijuana.  Such a sentence will promote respect for the law, and deter defendant and others who would seek to emulate his conduct.  In mitigation, defendant has no criminal history and was a minor participant in the offense.  A low-end sentence is also warranted by defendant's acceptance of responsibility and necessary to provide adequate deterrence and respect for the law.

## V. SUPERVISED RELEASE

The government agrees with the USPO that the Court should impose a five-year term of supervised release.  18 U.S.C. § 3583(b)(3).

## VI. SPECIAL ASSESSMENT AND FINE

Defendant must pay a $300 mandatory special assessment.  (PSR ¶ 104; 18 U.S.C. § 3013.)  The government agrees with the USPO that defendant is not able to pay a fine.  (PSR ¶ 89.)

**VII. CONCLUSION**

　　For the foregoing reasons, the government respectfully requests that this Court impose a sentence of 51 months' imprisonment, a five-year term of supervised release, and a $300 special assessment.